FILED
2014 Aug-04 PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DOSTER CONSTRUCTION COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | _____ |
| ALVIN KRANTZ PAINTING, INC., | ) ) | |
| Defendant. | ) | |

# COMPLAINT

For its Complaint against Defendant Alvin Krantz Painting, Inc. ("Krantz"), Plaintiff Doster Construction Company, Inc. ("Doster") states the following:

## Jurisdiction And Venue

1. Doster is incorporated under the laws of Alabama and maintains its principal place of business in Jefferson County, Alabama.

2. Krantz is incorporated under the laws of Tennessee and maintains its principal place of business in Tennessee.

3. This action is based on a written subcontract between Krantz and Doster dated June 11, 2012 (the "Krantz Subcontract") in which Krantz agreed to provide work and materials for a construction project at Wallace State Community College in Cullman County, Alabama. A true and correct copy of the Krantz

{B0678240.1}

Subcontract is attached as <u>Exhibit A</u> and is incorporated by reference into this Complaint.

4. Paragraph 46 of the Krantz Subcontract provides in pertinent part:

> 46. **Dispute Resolution**. . . . Any litigation arising out of the Subcontract or the Work shall be brought only in a state or federal court situated in Jefferson County, Alabama, which courts shall be the exclusive venues for any such litigation. . . Subcontractor irrevocably consents to the jurisdiction and venue of any state or federal court situated in Jefferson County, Alabama. (Krantz Subcontract, ¶ 46)

5. Doster and Krantz are citizens of different states, and the matter in controversy between the parties exceeds $75,000, excluding interest and costs.

6. This Court has original subject matter jurisdiction to adjudicate this action by virtue of 28 U.S.C. § 1332.

7. Venue in this Court is proper under 28 U.S.C. § 1391.

## Background

8. In 2012, Doster entered into a contract (the "Doster/Wallace State Contract") with Wallace State Community College ("Wallace State") to perform construction work for a project on Wallace State's campus known as the Wallace State School Of Nursing And Center For Science (the "Wallace State Project").

9. In the Krantz Subcontract, Doster subcontracted to Krantz, and Krantz agreed to perform, a portion of the work (generally described as painting and wallcovering) required by the Doster/Wallace State Contract.

{B0678240.1}

## Count One - Breach Of Contract

10. Krantz materially breached and defaulted on Krantz's obligations under the Krantz Subcontract.

11. Krantz's obligations under the Krantz Subcontract include, but are not limited to:

> 1. **The Work.** Subcontractor [Krantz] agrees to furnish all labor, materials, equipment, services, documents, and facilities (including scaffolding and hoisting) necessary for the satisfactory completion and acceptance of the work described below (the "Work"). . . . (Krantz Subcontract, ¶ 1)
>
> * * *
>
> **Subcontract Exhibit A.** Furnish all mobilizations, labor, materials, equipment, layout and supervision necessary to completely furnish and install and perform "The Work" (Painting and Wallcovering) as required for the Wallace State Community College New Health Sciences / Life Sciences Building project per plans, specifications, addenda 1 thru 10, and bid documents prepared by Williams Blackstock Architects, P.C. as further described below. This includes all required bonds, insurance, licenses, trade permits, fees, tools, storage facilities and other incidentals required for a complete installation. All work will be the highest standards and quality and in full compliance with all requirements of the Contract Documents. The Work will comply with all applicable local codes, regulations and shall be in accordance with all safety and Project specific Special Conditions enclosed. . . . (Krantz Subcontract, Exhibit A)
>
> * * *
>
> 2. **The Prime Contract.** The Prime Contract includes the Agreement between Contractor [Doster] and Owner [Wallace State] (including all general, special, and supplemental terms and conditions), as well as all addenda, modifications, revisions, drawings, specifications, and details; all documents, standards, codes, and regulations referenced in the Prime Contract; and any other documents that are or become a part of the Prime Contract. The Prime Contract is incorporated by reference into this Subcontract. . . . Subcontractor is obligated to Contractor for the Work to the full extent that Contractor is obligated under the Prime Contract for the Work, and Subcontractor assumes all obligations of Contractor arising from or under the Prime Contract with respect to the Work. . . .(Krantz Subcontract, ¶ 2)
>
> * * *
>
> 11. **Site Conditions And Existing Work.** . . . Subcontractor is responsible for coordinating its Work with the work of Contractor and others. Before proceeding with any Work, Subcontractor shall thoroughly inspect (including field measuring) all existing work by Contractor or others that is related to Subcontractor's Work to determine whether any defects, nonconformities, or discrepancies in such existing work may adversely affect Subcontractor's Work. Such inspection shall be performed with the greatest degree of skill and care generally employed by the most experienced and qualified subcontractors in Subcontractor's trade. Subcontractor shall notify Contractor in writing of any defects, discrepancies, or nonconformities detected by Subcontractor, and shall not proceed with any affected Work without first receiving specific written instructions from Contractor. . . (Kantz Subcontract, ¶ 11)

{B0678240.1}

13. **The Schedule.** Time is of the essence. Before and during performance of the Work, Subcontractor must remain knowledgeable about the progress of the Project, and make all arrangements necessary to coordinate its Work with, and not impede, that of Contractor and others. Subcontractor shall perform the Work in accordance with Contractor's schedule for the Project (the "Schedule"). As the Project progresses, Contractor may amend the Schedule (including both duration and sequences of activities) to reflect instructions from Owner, changes in the Project, changes in construction sequences, means, or methods, or unanticipated occurrences affecting the Project. Subcontractor shall comply with all such amendments. . . . (Krantz Subcontract, ¶ 13)

\* \* \*

**Subcontract Exhibit A.** The Subcontractor shall adhere to all requirements indicated by the Contractor's Project Schedule and shall maintain adequate manpower to prevent delays. This Subcontractor realizes that Saturday and Sunday shall be utilized when necessary to maintain or make up for lost time so as to meet all critical completion dates required by the Project Schedule. Overtime and associated cost for additional Saturday and Sunday work to maintain the Project Schedule is included in this Subcontract. . . . (Krantz Subcontract, Exhibit A)

\* \* \*

18. **Warranty.** Subcontractor warrants the Work to Contractor under the same terms and for at least the same period as Contractor has warranted the Work. Subcontractor assumes and shall perform all warranty obligations of Contractor that relate to the Work . . . In addition, Subcontractor warrants that the Work will be performed in strict accordance with all terms of this Subcontract and in conformity with the best practices of the construction industry . . .

All Work is subject to approval by Owner. If any part of the Work is determined to be defective or otherwise to constitute a breach of any of Subcontractor's warranties, Subcontractor, at its own expense, shall promptly correct or replace the same (as directed by Owner), and shall repair or replace any other work, materials, or property damaged or required to be redone as a result of such correction or replacement. . . . (Krantz Subcontract, ¶ 18)

\* \* \*

31. **Protection Of The Work.** Subcontractor shall carefully secure and protect the Work and all materials, equipment, or work of Contractor and others in the vicinity of the Work, and shall be liable for any loss or damage that results from Subcontractor's failure to do so. . . . (Krantz Subcontract, ¶ 31)

\* \* \*

43. **No Delay Because Of Claims.** . . . Subcontractor shall not stop or slow down the Work on account of, Contractor's non-payment of disputed amounts, including, but not limited to: (a) payments as to which Contractor contends one or more conditions provided in this Subcontract have not been satisfied; (b) payments for disputed Changes or disputed portions of Applications for Payment; or (c) payments of disputed amounts withheld by Contractor under Paragraph 4. (Krantz Subcontract, ¶ 43)

12. Krantz's breaches and defaults on its obligations under the Krantz Subcontract include, but are not limited to:

- Failures to procure required materials;

{B0678240.1}
4

- Failures to procure required materials in time to meet the project schedule;

- Failures to provide sufficient manpower to meet the project schedule;

- Failures to provide sufficient supervision to meet the project schedule;

- Failures and refusals to furnish required materials and work;

- Using materials that did not comply with the requirements of the applicable specifications and the Krantz Subcontract;

- Providing work that did not comply with the requirements of the applicable specifications and the Krantz Subcontract;

- Failing to complete its work in accordance with the project schedule.

13.    Provisions of the Krantz Subcontract applicable to Krantz's breaches and defaults include, but are not limited to:

> 34. **Default And Notice To Cure**. If Subcontractor fails to supply enough properly skilled workers, proper materials, or maintain the Schedule; fails to make timely payment to its workers, subcontractors or suppliers; furnishes deficient or defective work or materials;. . . ; or otherwise fails to strictly comply with any requirement of this Subcontract, then Subcontractor is in default.  The foregoing events and occurrences are referred to as "Events of Default." If Subcontractor fails, within three (3) days after oral or written notice from Contractor, to commence and satisfactorily continue correction of any Event of Default, then Contractor, without prejudice to any other rights or remedies and without notice to any surety (or any formal declaration of default), shall have the right, but not the obligation, to: (a) supply such workers, materials, equipment and other facilities as Contractor deems appropriate to address the Event of  Default; and/or (b) engage one or more additional contractors or subcontractors to perform any part of the Work that Contractor deems appropriate to address the Event of Default. . . (Krantz Subcontract, ¶ 34)
>
> * * *
>
> 36. **Liability For Contractor's Damages**. Without restricting Contractor's other rights and remedies under this Subcontract or applicable law, Subcontractor. . . shall be liable to Contractor for all costs, expenses, losses, and damages (including reasonable attorneys fees) resulting from any Event of Default or Contractor's exercise of any rights or remedies provided in Paragraphs 34 and 35. No act or failure to act by Contractor (including any failure to exercise the rights provided in Paragraphs 34 and 35) shall relieve Subcontractor . . . from any such liability. . . (Krantz Subcontract, ¶ 36)

{B0678240.1}

5

\* \* \*

> 44. **Expenses And Attorney's Fees**. . . . Subcontractor . . . shall . . . indemnify Contractor against, all damages, costs, judgments, fines, citations, assessments or expenses, including attorney's fees, incurred by Contractor as a result of Subcontractor's failure to strictly comply with any term or requirement of this Subcontract.(Krantz Subcontract, ¶ 44)

14. As a direct and proximate result of Krantz's breaches and defaults, Doster incurred substantial damages, including, but not limited to:

- Doster was required to procure and pay for materials necessary for completion of Krantz's work;

- Doster was required to procure and pay for equipment necessary for completion of Krantz's work;

- Doster was required to provide and pay for labor necessary for completion of Krantz's work;

- Doster was required to contract with and pay other painting and wallcovering contractors to complete portions of Krantz's work;

- Doster was required to provide and pay for additional site supervision necessary for completion of Krantz's work;

- Doster was required to provide and pay for project management services necessary for completion of Krantz's work;

- Doster's work on the Wallace State Project was delayed.

After subtracting the maximum remaining unpaid balance of the Krantz Subcontract, the principal amount of Doster's damages exceeds $97,700.00.

{B0678240.1}

15. All conditions precedent to Krantz's obligations and liabilities to Doster have been satisfied or excused. Doster is entitled to recover compensatory damages from Krantz in the principal amount of $97,710.01, plus interest and attorneys' fees.

### Count Two - Declaratory Judgment

16. Paragraphs 1 through 15 above are incorporated by reference.

17. After Doster was required to complete Krantz's work under the Krantz Subcontract as a result of Krantz's breaches and defaults, Krantz submitted to Doster a written claim for payment of $70,454.00 that Krantz contends is owed for alleged "Additional Work" and for payment of $25,214.65 that Krantz contends is owed as the remaining balance of the Krantz Subcontract (before adjustments for the alleged "Additional Work" claimed by Krantz). The total amount of the claim submitted by Krantz is $95,668.65. Krantz's claim was not submitted in compliance with the requirements of the Krantz Subcontract.

18. Doster denies that Krantz performed "Additional Work" that would entitle Krantz to the payment demanded by Krantz. In addition, Krantz's claim for payment for alleged "Additional Work" is barred and precluded by the terms of the Krantz Subcontract, by Krantz's failures to comply with those terms, and by Krantz's breaches and defaults under the Krantz Subcontract.

{B0678240.1}

19. Doster further asserts that Krantz's breaches and defaults under the Krantz Subcontract as set out in Count One above caused Doster to incur damages that exceed any remaining balance that might otherwise have existed under the Krantz Subcontract by more than $97,701.00

20. Terms of the Krantz Subcontract applicable to Krantz's demand for payment include, but are not limited to:

> 3. **The Subcontract Price**. . . . Subcontractor's Applications for Payment must be in the form specified by Contractor . . . (Krantz Subcontract, ¶3)
>
> * * *
>
> 4. **Retainage And Withholding**. Payments to Subcontractor are subject to retainage to the same extent as payments by Owner to Contractor. In addition to such retainage, Contractor may also withhold part or all of any progress or final payment to the extent reasonably necessary to protect Contractor from any loss that might arise from: (a) any Work unacceptable to Contractor, Owner, or Architect; (b) existing or anticipated claims against Contractor arising from the Work; (c) reasonable evidence that the Work cannot be completed for the unpaid balance of the Subcontract Price; (d) reasonable evidence that the Work cannot be completed in accordance with the Schedule; or (e) failure by Subcontractor to strictly comply with any requirement of this Subcontract. . . . No interest shall accrue on amounts which Contractor is permitted to withhold. (Krantz Subcontract, ¶ 4)
>
> * * *
>
> 5. **Payment Conditions**. The following conditions precedent must all be satisfied before any progress or final payment can become due. Contractor has no obligation to make payment to Subcontractor unless and until each of these conditions precedent has been satisfied: (a) Subcontractor has timely submitted a properly completed Application for Payment; . . . ; (d) Contractor has received payment from Owner in the amount applied for by Subcontractor or claimed by Subcontractor to be due (Subcontractor assumes the risk of Owner's inability or refusal to pay); . . . (f) Subcontractor has furnished, for itself and from each of its subcontractors and materialmen, releases and waivers of liens and claims that comply with the requirements of Paragraph 10 below; . . . and (h) with respect to final payment, Subcontractor has furnished an Affidavit and Final Release and Waiver of Liens and Claims that is satisfactory to Contractor. Payment to Subcontractor cannot become due until ten (10) business days after the foregoing conditions precedent have all been satisfied . . . (Krantz Subcontract, ¶ 5)
>
> * * *
>
> 6. **Effect Of Payment**. . . .Subcontractor's acceptance of a progress payment . . . releases Contractor from all liability (except retainage) arising from any Work performed (including Changes), or conditions or events occurring, before the date of the Application for Payment on which the payment is made. (Krantz Subcontract, ¶ 6)
>
> * * *

7. **Final Billing**. Subcontractor's final Application for Payment, including amounts requested for Changes, must be submitted within thirty (30) days after completion of the Work. Failure to submit a final Application for Payment within that time constitutes a waiver of any right to receive any further payment. (Krantz Subcontract, ¶ 7)

\* \* \*

10. **Waivers Of Claims And Liens**. Subcontractor shall provide, for itself and from its subcontractors and suppliers, any release or waiver of liens and claims required by the Prime Contract. In addition, with each Application for Payment, Subcontractor shall provide satisfactory evidence that it has paid its laborers, suppliers, and subcontractors for all work, equipment, and materials furnished through the date of the previous Application for Payment. (Krantz Subcontract, ¶ 10)

\* \* \*

11. **Site Conditions And Existing Work**. . . . Subcontractor is responsible for coordinating its Work with the work of Contractor and others. Before proceeding with any Work, Subcontractor shall thoroughly inspect (including field measuring) all existing work by Contractor or others that is related to Subcontractor's Work to determine whether any defects, nonconformities, or discrepancies in such existing work may adversely affect Subcontractor's Work. Such inspection shall be performed with the greatest degree of skill and care generally employed by the most experienced and qualified subcontractors in Subcontractor's trade. Subcontractor shall notify Contractor in writing of any defects, discrepancies, or nonconformities detected by Subcontractor, and shall not proceed with any affected Work without first receiving specific written instructions from Contractor. Subcontractor shall be responsible and liable for all costs and damages arising from Subcontractor's failure to comply with any of the above requirements. (Krantz Subcontract, ¶ 11)

\* \* \*

13. **The Schedule** . . . The Subcontract Price shall be adjusted for amendments to the Schedule only to the extent specifically and explicitly provided for in this Subcontract and only if all conditions described in this Paragraph and Paragraphs 14, 15, and 16 are fully satisfied. If an amendment materially reduces the duration (excluding float) provided in the Schedule for Subcontractor's Work, Subcontractor may become entitled to payment for any actual, documented net increase in Subcontractor's direct costs that results solely and necessarily from accelerated performance required by the amendment if, before proceeding with any Work on an accelerated basis, Subcontractor first: (a) specifically notifies Contractor in writing of the increased costs that will result from accelerated performance; and (b) thereafter obtains Contractor's specific, written, and signed authorization to proceed on an accelerated basis. . . . Subcontractor shall increase its work force, work overtime, and work Saturdays, Sundays and holidays, all without additional compensation, if the progress of Subcontractor's Work is not in compliance with the Schedule and such measures are necessary to bring Subcontractor's Work into compliance. No premium time will be paid except pursuant to prior written authorization, signed by Contractor, specifying that premium time will be paid and the amount that will be paid. (Krantz Subcontract, ¶ 13)

\* \* \*

14. **Delays**. . . . Except for delays that: (a) are directly caused solely by improper and unjustified affirmative acts by Contractor; and (b) result solely from conditions or decisions that are entirely within Contractor's effective and actual control, an adjustment

{B0678240.1}

of the Schedule is Subcontractor's sole remedy for any interferences, disruptions, suspensions, and delays, whether by Contractor or others, and Contractor shall have no other obligation or liability to Subcontractor. Adjustments to the Schedule will be made only if and to the extent all of the following conditions precedent have been satisfied: (c) Subcontractor has delivered to Contractor a written notice containing a specific request for adjustment of the Schedule within three (3) days after commencement of the occurrence or condition that causes the delay (regardless of whether Contractor has actual or constructive notice of the delay); (d) Contractor receives a corresponding time extension from Owner (except with respect to delays directly caused solely by improper and unjustified affirmative acts by Contractor which result solely from conditions or decisions that are entirely within Contractor's actual and effective control), and (e) Subcontractor demonstrates through an analysis of the impact on necessary predecessor-successor relationships between affected activities that the final completion date for Subcontractor's entire Work has necessarily been delayed and the extent of such delay. (Krantz Subcontract, ¶ 14)

\* \* \*

16. **Changes**. Contractor may . . . direct changes, additions, and/or deletions to the Work, or direct extra work (all of the foregoing are referred to as "Change(s)"). Regardless of whether a Change is initiated by written or oral authorization, direction, interpretation, determination, or any other form of words or conduct, Contractor shall be obligated to pay Subcontractor an amount in excess of the Subcontract Price and/or adjust the Schedule on account of a Change only if and to the extent the following conditions precedent have all been satisfied:

(a) <u>before Subcontractor proceeds with the Change</u>: (i) Contractor authorizes the Change in a signed written directive explicitly designated as a Change Order, <u>or</u> (ii) Subcontractor delivers to Contractor a written notice specifically describing in detail the nature and scope of the work that Subcontractor contends is a Change, and describing in detail the basis of Subcontractor's claim that such work constitutes a Change, and after receipt of such written notice, Contractor specifically and explicitly directs Subcontractor in writing to proceed with the Change; <u>and</u>

(b) Contractor receives payment from Owner for the Change in the amount requested by Subcontractor; <u>and</u>

(c) with respect to adjustment of the Schedule: (i) Subcontractor states the number of days requested in a written notice delivered to Contractor within three (3) days after initiation of the Change; and (ii) Contractor receives from Owner a corresponding time extension.

*Conditions (b) and (c)(ii) apply only to Changes which originate from actions, instructions, interpretations, or directions by Owner or Architect.* (Krantz Subcontract, ¶ 16)

\* \* \*

32. **Losses Caused By Others**. Contractor is not responsible or liable for any theft, loss, damage, or destruction of any of the Work or any of Subcontractor's equipment or materials resulting from any act or omission by any of Contractor's subcontractors or any third person. Rather, Subcontractor's exclusive remedy (other than any available builder's risk insurance) is against the subcontractor or third person responsible. Provided, however, that . . . with respect to any loss, damage, or destruction that is proven by Subcontractor to have been caused by any of Contractor's subcontractors, upon Contractor's receipt of: (a) a specific written notice from Subcontractor requesting assistance; and (b) satisfactory evidence from Subcontractor showing the source, cause, and extent of the loss, damage, or destruction, Contractor shall attempt to exercise, for the benefit of Subcontractor, any

{B0678240.1}

10

reasonably available remedy under the terms of Contractor's subcontract with the responsible subcontractor in an effort to recover the actual amount of such loss, damage, or destruction. (Krantz Subcontract, ¶ 32)

\* \* \*

42. **Claims**. Regardless of whether Contractor has actual or constructive notice of any claim of Subcontractor for additional compensation, time, or other consideration, Subcontractor agrees that such claim is waived and forfeited unless it is set forth in detail in a written notice to Contractor, and delivered to Contractor as soon as practicable in the circumstances, but in any event no later than seven (7) days after the first occurrence of any of the conditions out of which such claim arises. (Krantz Subcontract, ¶ 42)

\* \* \*

45. **Governing Law**. The terms and conditions of this Subcontract shall be construed and interpreted under, and the respective rights, duties, and obligations of the parties shall be governed by, Alabama law. . . . Subcontractor and Contractor specifically intend for the provisions of this Subcontract to pre-empt, supersede, and override any inconsistent provisions, requirements, rights, or remedies provided in Ala. Code §§ 8-29-1, et seq., including, but not limited to, Ala. Code §§ 8-29-3(e) & (f); 8-29-4(c); and 8-29-6. Contractor and Subcontractor represent and covenant to each other that neither will seek to invoke, rely upon, or enforce any provision in Ala. Code § 8-29-1, et seq. that is in any way inconsistent with any term or condition of this Subcontract. Without limiting the generality of the foregoing, the parties specifically waive the notice provisions in Ala. Code § 8-29-4(c). (Krantz Subcontract, ¶ 45)

\* \* \*

48. **Notices**. Except to the extent that this Subcontract explicitly provides otherwise, all notices required by this Subcontract must be in writing. To be effective, a copy of any notice to Contractor must be received by Contractor's Project Manager at the following address:

2100 International Park Drive
Birmingham, AL 35243

**and** by an officer of Contractor at the following address and addressed as follows:

> Doster Construction Company, Inc.
> 2100 International Park Drive
> Birmingham, AL  35243
> <u>Attention:  Walton C. Doster</u>

Delivery to Contractor at such addresses may be made by personal delivery or mail (first class, postage pre-paid United States mail), and each notice must also be simultaneously transmitted by facsimile to the following numbers:  (205) 951-2612 and (205) 951-2612 . . .

Any notice that does not comply with all of the foregoing requirements is not effective. (Krantz Subcontract, ¶ 48)

\* \* \*

{B0678240.1}

11

49. **Amendment Or Modification**. The parties intend and expect that the terms and conditions of this Subcontract will govern all aspects of their relationship in connection with the Work and the Project, and that no agreements inconsistent with the terms and conditions of this Subcontract may implied from their correspondence, statements, or conduct. Neither will rely upon, or claim to have relied upon, any correspondence, statements, or conduct as having amended or modified any of the terms and conditions of this Subcontract. Rather, an amendment or modification of this Subcontract may be made only by a written amendment that is specifically identified as such and is signed by both parties. (Krantz Subcontract, ¶ 49)

\* \* \*

50. **Non-Waiver**. No waiver of any term or condition of this Subcontract (including the conditions in Paragraphs 5, 13, 14, 15, 16, and 42), or any of Contractor's rights or remedies, shall result or be implied from any words or conduct of Contractor (or any reliance thereon by Subcontractor), including, but not restricted to: (a) any failure by Contractor to assert or enforce any such rights or remedies on other occasions; (b) any failure by Contractor to insist upon the occurrence or satisfaction of any such conditions on other occasions; (c) any payment or other consideration given by Contractor without the occurrence or satisfaction of such conditions; (d) the submission by Contractor to Owner of a request for additional time or compensation on Subcontractor's behalf without the occurrence or satisfaction of such conditions; or (e) any actual or constructive knowledge by Contractor. (Krantz Subcontract, ¶ 50)

21. With respect to Krantz's demand for payment of $70,454.00 for alleged "Additional Work," Krantz's failures to comply with the terms and requirements of the Krantz Subcontract include, but are not limited to:

- Krantz failed to provide prior written notice to Doster concerning any defects or deficiencies in the work of Doster or others in compliance with the requirements of Paragraphs 11 and 48 of the Krantz Subcontract;

- Krantz failed to provide written notice to Doster in compliance with the requirements of Paragraphs 13 and 48 of the Krantz Subcontract of any increased costs associated with any work on an accelerated basis prior to commencing with any such work;

- Krantz failed to obtain prior written authorization, signed by Doster, for payment of any overtime or premium time in compliance with Paragraph 13 of the Krantz Subcontract;

- Krantz failed to provide written notice to Doster of any delays to Krantz's work in compliance with the requirements of Paragraphs 14 and

48 of the Krantz Subcontract and otherwise failed to satisfy the requirements of Paragraph 14 of the Krantz Subcontract;

- Krantz failed to comply with the requirements of Paragraphs 16(a)(i) or 16(a)(ii) and Paragraph 48 (all quoted above) of the Krantz Subcontract in connection with any "Additional Work" that Krantz now claims to have performed;

- Krantz failed to comply with the requirements of Paragraphs 32, 42, and 48 of the Krantz Subcontract in connection with any damage to Krantz's work now alleged by Krantz to have been caused by others;

- Krantz failed to comply with the written notice requirements in Paragraphs 42 and 48 of the Krantz Subcontract with respect to any of the Additional Work that Krantz now claims to have performed;

- With the possible exception of one letter dated November 25, 2013, Krantz failed to provide written notice concerning any Additional Work that complied with the requirements of Paragraph 48 of the Krantz Subcontract. The letter dated November 25, 2013, was untimely and failed to comply with the timing and other requirements of Paragraphs 16, 32, and 42 of the Krantz Subcontract;

- Krantz's acceptance of progress payments and failure to submit a final Application for Payment in compliance with the requirements of Paragraphs 3, 5(a)(f) & (h), and 7 of the Krantz Subcontract operates as a waiver and release of any claim for "Additional Work".

22. Apart from the damages Krantz caused Doster to incur as a result of Krantz's breaches and defaults (which exceed any balance otherwise remaining under the Krantz Subcontract), and apart from Krantz's failures to comply with the terms and requirements of the Krantz Subcontract applicable to the alleged

"Additional Work" now claimed by Krantz, no payment of any balance under the Krantz Subcontract is owed because, among other reasons:

- Krantz has not submitted a final Application for Payment that complies with Paragraph 3 and Paragraph 5(a)(f)&(h) of the Krantz Subcontract;

- Doster is authorized by Paragraph 4 of the Krantz Subcontract to withhold payment;

- The conditions precedent in Paragraph 5 of the Krantz Subcontract have not been satisfied;

- Krantz failed to submit a final Application for Payment in compliance with Paragraph 8 of the Krantz Subcontract;

- Krantz failed to submit waivers and evidence of payment in compliance with Paragraph 10 of the Krantz Subcontract.

23. A present, actual, and justiciable controversy exists between Doster and Krantz concerning Krantz's claims for payment under and in connection with the Krantz Subcontract.

24. Doster is entitled to a judgment declaring that no amount is owed by Doster to Krantz under or in connection with the Krantz Subcontract and that Doster is entitled to recover compensatory damages from Krantz in the principal amount of $97,710.01 plus interest and attorneys' fees.

## Attorneys' Fees

25. Paragraph 44 of the Krantz Subcontract provides:

{B0678240.1}

14

44. **Expenses And Attorney's Fees**.   In the event Contractor initiates a suit, counterclaim, cross-claim, third-party claim, or any other form of proceeding against Subcontractor . . . to enforce any of Contractor's rights or remedies under this Subcontract. . . . . and Contractor obtains any substantial portion of relief requested, then Subcontractor . . . shall be liable for all of Contractor's costs and expenses, including reasonable attorneys fees, expert fees, and court costs. . . (Krantz Subcontract, ¶ 44)

## Relief Requested

WHEREFORE, Doster respectfully demands a judgment in favor of Doster and against Krantz:

a. Declaring that Doster owes Krantz nothing under or in connection with the Krantz Subcontract; and

b. Awarding to Doster an amount not less than $97,701.17 in principal compensatory damages; and

c. Awarding to Doster pre-judgment interest at the rate of 6% per annum commencing no later than February 1, 2014; and

d. Awarding to Doster an amount equal to all attorneys' fees and litigation expenses incurred by Doster in connection with filing and prosecuting this action; and

e. Providing such further and different relief as the Court deems just.

/s/ R. Carlton Smyly
R. Carlton Smyly (SMY006)
ASB-9739-M40R
rcs@cabaniss.com
Attorney For Plaintiff Doster Construction Company, Inc.

OF COUNSEL:

CABANISS, JOHNSTON, GARDNER,
  DUMAS & O'NEAL LLP
Park Place Tower
2001 Park Place North, Suite 700
Birmingham, Alabama 35203
(205) 716-5200

**PURSUANT TO ALA. R. CIV. P. 4(i)(2) and FED. R. CIV. P. 4(e)(1) & 4(h)(1)(A), PLAINTIFF REQUESTS SERVICE BY CERTIFIED MAIL ON THE DEFENDANT AS FOLLOWS:**

Alvin Krantz Painting, Inc.
c/o National Registered Agents, Inc., Registered Agent
150 S. Perry Street
Montgomery, AL 36104